UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————
COLONY INSURANCE COMPANY and UNITY
CONSTRUCTION SERVICES, INC.,

                             Plaintiffs,

                - against –

HUDSON EXCESS INSURANCE COMPANY and
MERCHANTS MUTUAL INSURANCE COMPANY,

                           Defendants.
———————————————————————————

Civil Action No.:
23-CV-8750 (JGK)

**SECOND
AMENDED COMPLAINT**

Plaintiffs Colony Insurance Company ("Colony") and Unity Construction Services, Inc. ("Unity"), by their attorneys Traub Lieberman Straus & Shrewsberry LLP, for their Second Amended Complaint for Declaratory Judgment against defendants, state as follows:

**NATURE OF ACTION, JURISDICTION AND PARTIES**

1.      This action is brought under Section 1332 of Title 28, United States Code, seeking this Court's determination concerning the respective rights and obligations of the parties under insurance policies issued by defendants Hudson Excess Insurance Company ("HEIC") and Merchants Mutual Insurance Company ("Merchants") to Blink Contracting, Inc. ("Blink") and Wiretech Electric Corp. ("Wiretech"), including a declaration that HEIC and Merchants have an obligation to defend and indemnify Unity Construction Services, Inc. ("Unity") in an underlying lawsuit.

2.      Colony is a Virginia corporation with its principal place of business in Chicago, Illinois.

3.      Unity is a New Jersey corporation with a principal place of business in Sayreville, New Jersey.

4.      HEIC is a Delaware corporation with a principal place of business in New York and issues insurance policies in the State of New York.

5.      Merchants is a mutual insurance company with a principal place of business in Buffalo, New York and issues insurance policies in the State of New York.

6.      The amount in controversy exceeds the sum or value of Seventy-Five Thousand ($75,000) Dollars exclusive of interest and costs.

7.      This is an action between citizens of different states and diversity jurisdiction is proper pursuant to 28 U.S.C. §1332.

8.      Venue is proper under 28 U.S.C. §1391 as one or more defendants reside in this judicial district or a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND FACTS

### Ramirez Action

9.      On March 9, 2020, Carlo Ramirez commenced a suit in the Supreme Court of the State of New York, County of New York, entitled *Ramirez v. Fulton SCG Development LLC, et al.*, Index No. 704096/2020 ("Ramirez Action").  A copy of the complaint in the Ramirez Action is annexed hereto as Exhibit A.

10.     Mr. Ramirez filed an amended complaint on September 11, 2020 in which he added Unity and Blink as defendants to the Ramirez Action.  A copy of the amended complaint in the Ramirez Action is annexed hereto as Exhibit B.

11.     In the Ramirez Action, plaintiff seeks recovery for injuries he allegedly sustained on February 13, 2020 while working at 133-36 37th Street, Flushing, New York (the "Premises")

when an electrical panel allegedly exploded due to the actions of other entities performing work at the Premises.

12.    In the Ramirez Action, plaintiff alleges that his injuries were caused by the carelessness, negligence, wanton and willful disregard of each of the defendants and that each of the defendants are jointly and severally liable for the plaintiff's damages.

13.    Plaintiff in the Ramirez Action further asserts that the alleged incident was caused solely by reason of the negligence, carelessness and recklessness of the defendants in that action in the ownership, operation, management, maintenance, cleaning, supervision and control of the Premises.

14.    In Unity's answer to the amended complaint, it asserted cross-claims against Blink alleging that any damages suffered by plaintiff were caused by Blink's culpable conduct, acts, omissions, negligence, strict products liability, statutory violation, breach of contract, obligation or warranty.

15.    Unity then commenced a third-party action against Wiretech on January 5, 2021 ("the third-party action").  Exhibit C.

16.    In the third-party action, Unity asserts that any damages suffered by plaintiff were caused entirely by Wiretech's primary negligence and that Unity is entitled to complete indemnity over and against Wiretech for any amounts plaintiff may recover.

17.    In the third-party action, Unity alleges that Wiretech breached an agreement to defend, indemnify and hold Unity harmless with respect lawsuits such as the Ramirez Action.

18.    In the third-party action, Unity alleges that Wiretech breached an agreement to provide Unity with insurance coverage for liability from lawsuits such as the Ramirez Action.

**The Colony Policy**

19.     Colony issued Commercial General Liability policy number 103 GL 0033341-01 to Unity for the policy period of January 31, 2020 to January 31, 2021 (the "Colony Policy").  A copy of the Colony Policy is annexed hereto as Exhibit D.

20.     Colony is providing Unity with a defense in the Ramirez Action.

21.     The Colony Policy provides, in pertinent part, as follows:

> This insurance is excess over:
>
> (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

Exhibit D, at 21 of 78.

**The HEIC Primary Policy**

22.     HEIC issued primary general liability policy number HXMP102505 ("the HEIC Primary Policy") to Blink for the policy period of October 3, 2019 to October 3, 2020, with limits of $1 million per occurrence.

23.     The HEIC Primary Policy was in full force and effect on the date of the accident alleged in the Ramirez Action.

24.     The HEIC Primary Policy applies to the allegations of the complaint in the Ramirez Action.

25.     The HEIC Primary Policy contains the following endorsement entitled, Additional Insured – Owners, Lessees or Contractors – Automatic Status for Other Parties When Required in Written Construction Agreement:

> **A. Section II – Who Is An Insured** is amended to include as an additional insured:

1.  Any person or organization with for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured to your policy; and

2.  Any other person or organization you are required to add as an additional insured under the contract or agreement described in Paragraph 1. Above.

Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part by:

a.  Your acts or omissions; or

b.  The acts omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured described above:

**a.**  Only applies to the extent permitted by law; and

**b.**  Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

26.    Upon information and belief, the HEIC Primary Policy provides that its coverage will be primary and non-contributory with respect to any person or organization that is entitled to additional insured coverage under that policy.

**<u>The HEIC Excess Policy</u>**

27.    HEIC issued an excess general liability policy to Blink bearing policy number HXMX201838 ("the HEIC Excess Policy").

28.    The HEIC Excess Policy was in full force and effect on the date of the accident alleged in the Ramirez Action.

29.    The HEIC Excess Policy applies to the allegations of the complaint in the Ramirez Action.

30.    The HEIC Excess Policy provides additional insured coverage to Unity for the Ramirez Action.

31.    The HEIC Excess Policy provides additional insured coverage to Unity, on a primary and non-contributory basis, for the Ramirez Action

32.    The HEIC Primary Policy constitutes underlying insurance with respect to the HEIC Excess Policy

**The Merchants Primary Policy**

33.    Merchants issued primary general liability policy number BOPI097288 ("the Merchants Primary Policy") to Wiretech for the policy period of November 19, 2019 to November 8, 2020, with limits of $2 million per occurrence and $2 million in the aggregate.

34.    The Merchants Primary Policy was in full force and effect on the date of the accident alleged in the Ramirez Action.

35.    The Merchants Primary Policy applies to the allegations of the complaint in the Ramirez Action.

36.    The Merchants Primary Policy contains the following additional insured endorsement:

> 3.  Additional Insureds By Contract, Agreement or Permit:
>
> a. Any person or organization when you or such person or organization have agreed in writing in a contract, agreement or permit that was signed and executed prior to the "bodily injury" . . . that such person or organization is an additional insured to only with respect to liability for "bodily injury" . . . caused, in whole or in part, by:
>
> (1) Your acts or omissions; or
> (2) The acts or omissions of those acting on your behalf;
> in the performance of your ongoing operations for the additional insured.

* * *

    c.   This insurance is primary if that is required by the contract, agreement or permit.

    d.   This insurance is non-contributory of that is required by the contract, agreement or permit.

**Merchants Umbrella Policy**

37.     Merchants issued commercial umbrella policy number CUP9149347 to Wiretech for the policy period of November 8, 2019 to November 8, 2020, with limits of $2 million per occurrence and $4 million in the aggregate ("Merchants Umbrella Policy").

38.     The Merchants Umbrella Policy was in full force and effect on the date of the accident alleged in the Ramirez Action.

39.     The Merchants Umbrella Policy applies to the allegations of the complaint in the Ramirez Action.

40.     The Merchants Umbrella Policy states the following in the Who Is An Insured section of its policy:

> Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

41.     The Merchants Primary Policy constitutes "underlying insurance" with respect to the Merchants Umbrella Policy.

**The Contracts**

42.     Unity and Blink entered into a Contract ("Blink Contract") for work to be performed at the Premises.  A copy of the Blink Contract is annexed hereto as Exhibit E.

43.     Pursuant to the Blink Contract, Blink was responsible for providing all labor, materials, supervision and items required for the proper and complete performance of the work to be performed under the Blink Contract.

44.    Pursuant to paragraph 11.1 of the Blink Contract, Blink was required to maintain commercial general liability insurance with limits no less than $1,000,000 each occurrence and $2,000,000 annual aggregate.  Exhibit E at p.3.

45.    Pursuant to paragraph 11.1.c of the Blink Contract, Unity (as the general contractor with respect to the work being performed on the Premises), was to be included as an additional insured on Blink's commercial general liability coverage.  Exhibit E at p.3.

46.    Pursuant to paragraph 11.1.c. of the Blink Contract, Blink's commercial general liability coverage was to apply to Unity on a primary, non-contributory basis.  Exhibit E at 3.

47.    Pursuant to paragraph 11.3.a. of the Blink Contract, Blink was required to maintain $1,000,000 in commercial umbrella insurance.  Exhibit E at p.3

48.    Pursuant to paragraph 11.3.b. of the Blink Contract, Unity (as the general contractor with respect to the work being performed on the Premises), was to be included as an additional insured on Blink's commercial umbrella insurance.  Exhibit E at p.3.

49.    Pursuant to paragraph 11.3.c. of the Blink Contract, Blink's commercial umbrella insurance was to apply to Unity on a primary, non-contributory basis.  Exhibit E at 3.

50.    Paragraph 11.6 of the Blink Contract states as follows:

> To the fullest extent permitted by law, the Subcontractor agrees to defend, indemnify and hold harmless the Contractor, the Owner. and any other party whom the Contractor has agreed to defend, indemnify and hold harmless, as well as each of their officers. directors, partners, agents, servants, employees, successors and assigns ("indemnitees") from and against any and all claims. damages, losses, costs and expenses of any kind, including but not limited to attorney's fee, incurred by reason of any liability for damage because of bodily injury, including death resulting from such injuries, or property damage to real and personal property of any kind whatsoever, sustained by any person or persons, whether employees of the Subcontractor or otherwise' resulting from, arising out of or occurring in connection with the performance of the work

provided for in this contract. together with any change orders or additions to the work included in the contract.

The Subcontractor agrees that the obligation to defend, indemnify and hold harmless, as described above, specifically includes the obligation to defend, indemnify and hold harmless the indemnitees for the indemnitees' own negligence or fault. excepting from the foregoing the sole negligence or fault of any indemnitee if prohibited by law.

The Subcontractor agrees that the obligation to defend commences when a claim is made against an indemnitee, even if the Subcontractor disputes its obligation to indemnify and hold harmless. The defense shall be provided through counsel chosen by the indemnitee, and the Subcontractor agrees to pay for the defense of the indemnitee upon demand. The obligation to defend, indemnify and hold harmless, as described above. survives completion or acceptance of the Work. This indemnification clause supersedes any other indemnification clause in the Contract Documents, including those that are incorporated by reference, or that conflict with it in any way. Subcontractor also agrees to contractually bind its Subcontractors (if any) to defend, indemnify and hold harmless the indemnitees to the same extent as the Subcontractor is obligated. This indemnification clause, irrespective of any other choice of law provision, shall be interpreted according to the laws of the state of New Jersey.

Exhibit E at 3-4.

51.    Unity and Wiretech entered into a Contract ("the Wiretech Contract") for work to be performed at the Premises.  A copy of the Wiretech Contract is annexed hereto as Exhibit F.

52.    Pursuant to the Wiretech Contract, Wiretech was responsible for providing all labor, materials, supervision and items required for the proper and complete performance of the work to be performed under the Wiretech Contract.  Ex. F at 1.

53.    Pursuant to paragraph 11.1 of the Wiretech Contract, Wiretech was required to maintain commercial general liability insurance with limits no less than $1,000,000 each occurrence and $2,000,000 annual aggregate.  Exhibit F at p.1-2.

54.    Pursuant to paragraph 11.1.c of the Wiretech Contract, Unity (as the general contractor with respect to the work being performed on the Premises), was to be included as an additional insured on Blink's commercial general liability coverage.  Exhibit F at p. 2.

55.    Pursuant to paragraph 11.1.c. of the Wiretech Contract, Blink's commercial general liability coverage was to apply to Unity on a primary, non-contributory basis.  Exhibit F at 2.

56.    Pursuant to paragraph 11.3.a. of the Wiretech Contract, Wiretech was required to maintain $1,000,000 in commercial umbrella insurance.  Exhibit F at p.3.

57.    Pursuant to paragraph 11.3.b. of the Wiretech Contract, Unity (as the general contractor with respect to the work being performed on the Premises), was to be included as an additional insured on Wiretech's commercial umbrella insurance.  Exhibit F at p.2.

58.    Pursuant to paragraph 11.3.c. of the Wiretech Contract, Wiretech's commercial umbrella insurance was to apply to Unity on a primary, non-contributory basis.  Exhibit F at 3.

59.    Paragraph 11.6 of the Wiretech Contract states as follows:

> To the fullest extent permitted by law, the Subcontractor agrees to defend, indemnify and hold harmless the Contractor, the Owner. and any other party whom the Contractor has agreed to defend, indemnify and hold harmless, as well as each of their officers. directors, partners, agents, servants, employees, successors and assigns ("indemnitees") from and against any and all claims. damages, losses, costs and expenses of any kind, including but not limited to attorney's fee, incurred by reason of any liability for damage because of bodily injury, including death resulting from such injuries, or property damage to real and personal property of any kind whatsoever, sustained by any person or persons, whether employees of the Subcontractor or otherwise' resulting from, arising out of or occurring in connection with the performance of the work provided for in this contract. together with any change orders or additions to the work included in the contract.
>
> The Subcontractor agrees that the obligation to defend, indemnify and hold harmless, as described above, specifically includes the obligation to defend, indemnify and hold harmless the indemnitees for the indemnitees' own negligence or fault. excepting from the

foregoing the sole negligence or fault of any indemnitee if prohibited by law.

The Subcontractor agrees that the obligation to defend commences when a claim is made against an indemnitee, even if the Subcontractor disputes its obligation to indemnify and hold harmless. The defense shall be provided through counsel chosen by the indemnitee, and the Subcontractor agrees to pay for the defense of the indemnitee upon demand. The obligation to defend, indemnify and hold harmless, as described above. survives completion or acceptance of the Work. This indemnification clause supersedes any other indemnification clause in the Contract Documents, including those that are incorporated by reference, or that conflict with it in any way. Subcontractor also agrees to contractually bind its Subcontractors (if any) to defend, indemnify and hold harmless the indemnitees to the same extent as the Subcontractor is obligated. This indemnification clause, irrespective of any other choice of law provision, shall be interpreted according to the laws of the state of New Jersey.

Exhibit F at 3-4.

**Tender Correspondence**

60.     Colony tendered the Ramirez Action to HEIC and Blink, on behalf of Unity, in correspondence dated March 18, 2020 seeking additional insured coverage for Unity under the HEIC Primary Policy and the HEIC Excess Policy.  Exhibit G.

61.     Colony never received a response to its March 18, 2020 tender letter to HEIC and Blink.

62.     In correspondence dated January 6, 2021, counsel for Unity reiterated the tender of the Ramirez Action to HEIC and Blink seeking additional insured coverage for Unity under the HEIC Primary Policy and the HEIC Excess Policy.  Exhibit H.

63.     In correspondence dated January 15, 2021, HEIC rejected the tender with respect to the HEIC Primary Policy only, on the grounds that Unity did not qualify as an additional insured because there was no evidence that the explosion at issue in the Ramirez Action was caused or contributed to by acts or omission on the part of Blink.  Exhibit I.

-11-

64.    In correspondence dated June 3, 2022, counsel for Colony reiterated the tender of the Ramirez Action to HEIC.  Exhibit J.

65.    In an email dated August 29, 2022, HEIC responded to the June 3, 2022 letter and advised that "Hudson has carefully evaluated your letter as well as discovery in the captioned matter.  Based on its review, Hudson maintains its tender denial."  Exhibit K.

66.    Colony tendered the Ramirez Action to Wiretech and Merchants in correspondence dated March 18, 2020. Exhibit L.

67.    In correspondence dated March 26, 2020, Merchants rejected the tender as premature, as no claim or lawsuit had yet been filed.  Exhibit M.

68.    Merchants again rejected the tender in correspondence dated June 18, 2020, on the grounds that the tender was premature because no action had been commenced in connection with the incident at issue and that Merchants "had not received any information indicating that Unity's liability for Mr. Ramirez's injuries was caused, in whole or in part, by Wiretech's acts or omissions or the acts or omissions of those acting on its behalf in the performance of its ongoing operations for Unity."  Exhibit N.

69.    Merchants issued a further response to Colony's tender on March 18, 2021 in correspondence that is erroneously dated March 18, 2020.  Exhibit O.  Once again, Merchants denied any additional insured coverage to Unity under a businessowners liability policy ("BOP") issued to Wiretech on the ground that its investigation led Merchants to determine that "Mr. Ramirez's injuries were not caused, in whole or in part, by Wiretech's acts or omissions or the acts or omissions of those acting on its behalf during the performance of its ongoing operations for Unity."

70.     In the aforementioned letter, Merchants also denied additional insured coverage to Unity under the Merchants Umbrella Policy issued to Wiretech "because Unity is not entitled additional insured coverage under the BOP policy." Exhibit O.

71.     In correspondence dated January 6, 2021, counsel for Unity reiterated the tender of the Ramirez Action to Wiretech and Merchants. Exhibit P.

72.     Neither Wiretech nor Merchants have responded to the January 6, 2021 tender.

73.     In correspondence dated June 3, 2022, counsel for Colony reiterated the tender of the Ramirez Action to Merchants. Exhibit Q

74.     Neither Wiretech nor Merchants have responded to the June 3, 2022 tender.

75.     To date, HEIC has not assumed the defense and indemnification of Unity in the Ramirez Action.

76.     To date, Merchants has not assumed the defense and indemnification of Unity in the Ramirez Action.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment against HEIC)

77.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "77" of the complaint as if fully set forth herein at length.

78.     Unity qualifies as an additional insured under the HEIC Primary Policy.

79.     Unity and Blink entered a contract for work to be performed at the Premises.

80.     Plaintiff in the Ramirez Action seeks recovery for bodily injury caused, in whole or in part, by Blink's acts or omissions in the performance of ongoing operations for Unity.

81.     Plaintiff's alleged injuries in the Ramirez Action were not caused, in whole or in part, by Unity's negligence.

82.    Pursuant to the HEIC Primary Policy, HEIC has a duty to defend and indemnify Unity in the Ramirez Action under the HEIC Primary Policy.

83.    The Ramirez Action falls within the scope of the HEIC Primary Policy.

84.    The HEIC Primary Policy is primary and non-contributory insurance with respect to Unity and the Colony Policy is excess to, and non-contributing with, the HEIC Primary Policy.

85.    The defense and indemnification of Unity in the Ramirez Action was timely tendered to HEIC.

86.    Colony and Unity have suffered and will continue to suffer damages, harm and prejudice by virtue of the failure of HEIC to fulfill its obligations to provide insurance coverage to them on a primary, non-contributory basis including, but not limited to, the costs of defending the Ramirez Action, and incurring further expense in settling that action or satisfying a judgment that may be obtained against them in that action.

87.    Because HEIC is liable to Unity for any and all damages incurred by virtue of HEIC's insurance obligation and breach of contract, judgment should be entered accordingly declaring that HEIC is required to provide primary, non-contributory coverage to Unity for defense pertaining to the Ramirez Action under the HEIC Primary Policy.

88.    Because HEIC is liable to plaintiff for any and all damages incurred by virtue of HEIC's insurance obligation and breach of contract, judgment should be entered accordingly declaring that HEIC is required to provide primary, non-contributory coverage to Unity for indemnity pertaining to the Ramirez Action under the HEIC Primary Policy.

89.    Because HEIC has breached its duty to defend, plaintiff is entitled to prejudgment interest on the defense costs calculated from the date that HEIC should have begun making defense payments.

90.     Plaintiff has suffered and will continue to suffer damages, harm and prejudice by virtue of the failure of HEIC to fulfill its obligations to provide primary insurance coverage to Unity on a primary, non-contributory basis, including, but not limited to, the costs of defending the Ramirez Action, and incurring further expense in settling that action or satisfying a judgment that may be obtained against Unity in that action.

91.     Plaintiff is entitled to a declaration that HEIC has a duty to reimburse plaintiff for defense costs incurred in defending the Ramirez Action under the HEIC Primary Policy, together with prejudgment interest on the defense costs calculated from the date that HEIC should have begun making defense payments.

92.     Plaintiffs have no adequate remedy of law.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment Against HEIC)

93.     Plaintiffs repeat and reallege the allegations contained in paragraphs "1" through "92" of the complaint as if fully set forth herein at length.

94.     Unity qualifies as an additional insured under the HEIC Excess Policy.

95.     Unity and Wiretech entered a contract for work to be performed at the Premises.

96.     Plaintiff in the Ramirez Action seeks recovery for bodily injury caused, in whole or in part, by Wiretech's acts or omissions in the performance of ongoing operations for Unity.

97.     Plaintiff's alleged injuries in the Ramirez Action were not caused, in whole or in part, by Unity's negligence.

98.     Pursuant to the HEIC Excess Policy, HEIC has a duty to defend and indemnify Unity in the Ramirez Action .

99.     The Ramirez Action falls within the scope of the HEIC Excess Policy.

100.     The HEIC Excess Policy is primary and non-contributory insurance with respect to Unity and the Colony Policy is excess to, and non-contributing with, the HEIC Excess Policy.

101.     The tender of coverage to HEIC by and on behalf of Unity in the Ramirez Action was timely.

102.     Colony and Unity have suffered and will continue to suffer damages, harm and prejudice by virtue of the failure of HEIC to fulfill its obligations to provide insurance coverage to them on a primary, non-contributory basis, including but not limited to, the costs of defending the Ramirez Action, and incurring further expense in settling that action or satisfying a judgment that may be obtained against them in that action.

103.     Because HEIC is liable to plaintiffs for any and all damages incurred by virtue of HEIC's insurance obligation and breach of contract, judgment should be entered accordingly declaring that HEIC is required to provide primary, non-contributory coverage to Unity for defense pertaining to the Ramirez Action under the HEIC Excess Policy.

104.     Because HEIC is liable to plaintiffs for any and all damages incurred by virtue of Merchant's insurance obligation and breach of contract, judgment should be entered accordingly declaring that HEIC is required to provide primary, non-contributory coverage to Unity for indemnity pertaining to the Ramirez Action under the HEIC Excess Policy.

105.     Plaintiffs have no adequate remedy of law

### THIRD CAUSE OF ACTION
### (Declaratory Judgment against Merchants)

106.     Plaintiffs repeat and reallege the allegations contained in paragraphs "1" through "105" of the complaint as if fully set forth herein at length.

107.     Unity qualifies as an additional insured under the Merchants Primary Policy.

108.     Unity and Wiretech entered a contract for work to be performed at the Premises.

109.     Plaintiff in the Ramirez Action seeks recovery for bodily injury caused, in whole or in part, by Wiretech's acts or omissions in the performance of ongoing operations for Unity.

110.     Plaintiff's alleged injuries in the Ramirez Action were not caused, in whole or in part, by Unity's negligence.

111.     Pursuant to the Merchants Primary Policy, Merchants has a duty to defend and indemnify Unity in the Ramirez Action.

112.     The Ramirez Action falls within the scope of the Merchants Primary Policy.

113.     The Merchants Primary Policy is primary and non-contributory insurance with respect to Unity and the Colony Policy is excess to, and non-contributing with, the Merchants Primary Policy.

114.     The defense and indemnification of Unity in the Ramirez Action was timely tendered to Merchants.

115.     Colony and Unity have suffered and will continue to suffer damages, harm and prejudice by virtue of the failure of Merchants to fulfill its obligations to provide insurance coverage to them on a primary, non-contributory basis including, but not limited to, the costs of defending the Ramirez Action, and incurring further expense in settling that action or satisfying a judgment that may be obtained against them in that action.

116.     Because Merchants is liable to Unity for any and all damages incurred by virtue of HEIC's insurance obligation and breach of contract, judgment should be entered accordingly declaring that Merchants is required to provide primary, non-contributory coverage to Unity for defense pertaining to the Ramirez Action under the Merchants Primary Policy.

117.     Because Merchants is liable to plaintiff for any and all damages incurred by virtue of Merchant's insurance obligation and breach of contract, judgment should be entered accordingly

declaring that Merchants is required to provide primary, non-contributory coverage to Unity for indemnity pertaining to the Ramirez Action under the Merchants Primary Policy.

118.    Because Merchants has breached its duty to defend, plaintiff is entitled to prejudgment interest on the defense costs calculated from the date that Merchants should have begun making defense payments.

119.    Plaintiff has suffered and will continue to suffer damages, harm and prejudice by virtue of the failure of Merchants to fulfill its obligations to provide primary insurance coverage to Unity on a primary, non-contributory basis, including, but not limited to, the costs of defending the Ramirez Action, and incurring further expense in settling that action or satisfying a judgment that may be obtained against Unity in that action.

120.    Plaintiff is entitled to a declaration that Merchants has a duty to reimburse plaintiff for defense costs incurred in defending the Ramirez Action, together with prejudgment interest on the defense costs calculated from the date that Merchants should have begun making defense payments.

121.    Plaintiffs have no adequate remedy of law.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment against Merchants Umbrella Policy)

122.    Plaintiffs repeat and reallege the allegations contained in paragraphs "1" through "121" of the complaint as if fully set forth herein at length.

123.    Unity qualifies as an additional insured under the Merchants Umbrella Policy.

124.    Unity and Wiretech entered a contract for work to be performed at the Premises.

125.    Plaintiff in the Ramirez Action seeks recovery for bodily injury caused, in whole or in part, by Wiretech's acts or omissions in the performance of ongoing operations for Unity.

126.    Plaintiff's alleged injuries in the Ramirez Action were not caused, in whole or in part, by Unity's negligence.

127.    Pursuant to the Merchants Umbrella Policy, Merchants has a duty to defend and indemnify Unity in the Ramirez Action .

128.    The Ramirez Action falls within the scope of the Merchants Umbrella Policy.

129.    The Merchants Umbrella Policy is primary and non-contributory insurance with respect to Unity and the Colony Policy is excess to, and non-contributing with, the Merchants Umbrella Policy.

130.    The tender of coverage to Merchants by and on behalf of Unity in the Ramirez Action was timely.

131.    Colony and Unity have suffered and will continue to suffer damages, harm and prejudice by virtue of the failure of Merchants to fulfill its obligations to provide insurance coverage to them on a primary, non-contributory basis including, but not limited to, the costs of defending the Ramirez Action, and incurring further expense in settling that action or satisfying a judgment that may be obtained against them in that action.

132.    Because Merchants is liable to plaintiffs for any and all damages incurred by virtue of Merchant's insurance obligation and breach of contract, judgment should be entered accordingly declaring that Merchants is required to provide primary, non-contributory coverage to Unity for defense pertaining to the Ramirez Action under the Merchants Umbrella Policy.

133.    Because Merchants is liable to plaintiff for any and all damages incurred by virtue of Merchant's insurance obligation and breach of contract, judgment should be entered accordingly declaring that Merchants is required to provide primary, non-contributory coverage to Unity for indemnity pertaining to the Ramirez Action.

134.    Plaintiffs have no adequate remedy of law.

**WHEREFORE**, plaintiffs demand judgment as follows:

a.    A declaration that the HEIC Primary Policy affords primary coverage to Unity for the claims asserted against it in the Ramirez Action, and that HEIC is therefore obligated to fully insure, defend and indemnify Unity in the Ramirez Action;

b.    A declaration that the Colony Policy is excess over the HEIC Primary Policy and does not contribute to the cost of defense or the indemnification of Unity;

c.    A declaration that HEIC is obligated to reimburse Colony for all of the defense expenses (including attorney's fees) incurred on behalf of Unity in defending the Ramirez Action, with interest;

d.    A declaration that HEIC owes Unity a duty to defend it in the Ramirez Action;

e.    A declaration that HEIC owes a duty to indemnify Unity in the Ramirez Action;

f.    A declaration that the HEIC Excess Policy affords coverage tor Unity for the claims asserted against it in the Ramirez Action, and that HEIC is therefore obligated to fully indemnify Unity in the Ramirez Action;

g.    A declaration that the Colony Policy is excess over the HEIC Excess Policy and does not contribute to the indemnification of Unity;

h.    A declaration that HEIC owes a duty to defend and indemnify Unity in the Ramirez Action under the HEIC Excess Policy;

i.    A declaration that the Merchants Primary Policy affords primary coverage to Unity for the claims asserted against it in the Ramirez Action, and that Merchants is therefore obligated to fully insure, defend and indemnify Unity in the Ramirez Action;

j.    A declaration that the Colony Policy is excess over the Merchants Primary Policy and does not contribute to the cost of defense or the indemnification of Unity;

k.    A declaration that Merchants is obligated to reimburse Colony to all of the defense expenses (including attorney's fees) incurred on behalf of Unity in defending the Ramirez Action, with interest pursuant;

l.    A declaration that Merchants owes Unity a duty to defend it in the Ramirez Action under the Merchants Primary Policy;

m.    A declaration that Merchants owes Unity a duty to indemnify Unity in the Ramirez Action under the Merchants Primary Policy;

n.  A declaration that the Merchants Umbrella Policy affords coverage to Unity for the claims asserted against it in the Ramirez Action, and that Merchants is therefore obligated to fully indemnify Unity in the Ramirez Action;

o.  A declaration that the Colony Policy is excess over the Merchants Umbrella Policy and does not contribute to the indemnification of Unity;

p.  A declaration that Merchants owes a duty to defend and  indemnify Unity in the Ramirez Action under the Merchants Umbrella Policy; and

q.  Such other relief as the Court deems proper, together with reasonable attorney's fees, costs and disbursements in this action.

Dated:  Hawthorne, New York
        March 5, 2024

                              **TRAUB LIEBERMAN STRAUS**
                              **& SHREWSBERRY LLP**
                              *Attorneys for Plaintiffs*
                              *Colony Insurance Company and*
                              *Unity Construction Services, Inc.*


                    By:     *Jonathan Harwood*
                            Jonathan Harwood
                            Mid-Westchester Executive Park
                            Seven Skyline Drive
                            Hawthorne, New York 10532
                            (914) 347-2600