**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**COLONY INSURANCE COMPANY, ET AL.,**

                    **Plaintiffs,**            **23-cv-8750 (JGK)**

        **- against -**                        <u>**MEMORANDUM OPINION AND**</u>
                                               <u>**ORDER**</u>
**HUDSON EXCESS INSURANCE COMPANY, ET**
**AL.,**

                    **Defendants.**
────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    This case is a dispute between three insurers regarding the extent of each insurer's obligation to defend and indemnify Unity Construction Services, Inc. ("Unity") in an underlying lawsuit. The plaintiffs, Unity and its direct insurer Colony Insurance Company ("Colony"), brought this action against Hudson Excess Insurance Company ("HEIC") and Merchants Mutual Insurance Company ("Merchants"). HEIC crossclaimed against Merchants and counterclaimed against the plaintiffs. Merchants crossclaimed against HEIC.

    The parties now cross-move for partial summary judgment. HEIC also moves to dismiss the action for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

1

**I.**

The following facts are undisputed unless otherwise noted.[1]

**A.**

The plaintiff Unity was the general contractor at a construction project located at 133-36 37th Street, Flushing, New York (the "Worksite"). See Pltfs' 56.1 ¶ 1, 20, ECF No. 70. In October 2019, Unity entered into subcontracts with:

- Blink Contracting Inc. ("Blink") for framing, drywall, ceilings, and other carpentry work at the Worksite (the "Blink Subcontract"), Harwood Decl., Ex. G, ECF No. 67-7; and

- Wiretech Electric Corporation ("Wiretech") for electric and alarm work at the Worksite (the "Wiretech Subcontract") (together with the Blink Subcontract, the "subcontracts"), id., Ex. H, ECF No. 67-8.

Each subcontract required the respective subcontractor to "purchase and maintain" certain types of insurance and to list "as additional insureds" Unity and the project owner. Id., Ex. G at 2; Ex. H at 2. The relevant insurance provisions of the subcontracts are listed below:

- Paragraph 11.1 required the subcontractor to obtain commercial general liability ("CGL") coverage "with limits of Insurance of not less than $1,000,000 each occurrence

---

[1] The parties have filed numerous duplicative statements and exhibits to declarations. This Memorandum Opinion and Order omits duplicative citations.

and $2,000,000 Annual Aggregate." <u>Id.</u>, Ex. G at 2; Ex. H at 2.

- Paragraph 11.1.c required the subcontractor's CGL insurance to include Unity as an additional insured and to "apply as Primary and non-contributing Insurance" for Unity. <u>Id.</u>, Ex. G at 3; Ex. H at 3.

Additionally, at paragraph 11.7, each subcontract contained the following provision:

> This Agreement and all contracts and covenants hereunder shall be governed by and interpreted according to the laws of the State of New Jersey, without regard to conflicts of law principles. Any dispute arising out of or related to this Agreement or the alleged breach thereof shall be resolved by litigation in in [sic] the Superior Court of New Jersey and in any litigation commenced pursuant to this paragraph [the subcontractor] hereby waives any defenses based on personal jurisdiction or forum non conveniens. [Unity] and [the subcontractor] expressly waive their right to trial-by-jury and agree that the litigation shall be resolved by bench trial.

<u>Id.</u>, Ex. G at 4; Ex. H at 4.

**B.**

For relevant purposes, Colony insured Unity, HEIC insured Blink, and Merchants insured Wiretech. Pltfs' 56.1 ¶¶ 11-19. The parties' respective policies are summarized in relevant part below.

Colony issued to Unity an occurrence based GCL policy numbered 103 GL 0033341-01 (the "Colony Policy"). Vogel Decl., Ex. A, ECF No. 68-1. The Colony Policy provided: "This insurance is excess over . . . Any other primary insurance available to you covering liability for damages arising out of the premises

or operations, or the products and completed operations, for which you have been added as an additional insured." Id. at *22.

HEIC issued to Blink an occurrence based GCL policy numbered HXMP102505 (the "HEIC Policy"). HEIC Resp. to Pltfs' 56.1 ¶ 13, ECF No. 87. The HEIC Policy included "as an additional insured" the following:

> 1. Any person or organization with for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured to your policy; and
>
> 2. Any other person or organization you are required to add as an additional insured under the [Blink Subcontract].

Id. ¶ 14.

> The HEIC Policy also provided:
>
> Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part by:
>
> > a. Your acts or omissions; or
> >
> > b. The acts or omissions of those acting on your behalf;
>
> In the performance of your ongoing operations for the additional insured.
>
> However, the insurance afforded to such additional insured described above:
>
> > a. Only applies to the extent permitted by law; and
> >
> > b. Will not be broader than that which you are required by the [Blink Subcontract].

Id. As required by the Blink Subcontract, the HEIC Policy was primary and non-contributory. HEIC's Resp. to Merchants' 56.1 ¶

14, ECF No. 99. Where all other applicable insurance policies permitted contribution by equal share, the HEIC Policy followed that cost-allocation method. Id. ¶ 15.

For the relevant policy period, Merchants issued to Wiretech an occurrence-based general liability policy numbered BOPI097288 (the "Merchants Policy"). Pavloff Decl., Ex. 1, ECF No. 74-1. The Merchants Policy had limits of $2 million per occurrence and $4 million in the aggregate. Id. at *6.[2] The Merchants Policy included as additional insureds:

> a. Any person or organization, when you and such person or organization have agreed in writing in a contract, agreement or permit that was signed and executed prior to the "bodily injury" . . . that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" . . . caused, in whole or in part, by:
>
> > (1) Your acts or omissions; or
> >
> > (2) The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured. . . .

Id. at *106.

The Merchants Policy also provided:

> c. This insurance is primary if that is required by the contract, agreement or permit.
>
> d. This insurance is non-contributory if that is required by the contract, agreement or permit.

Id.

---

[2] The plaintiffs contend that the Merchants Policy had "limits of $2 million per occurrence and $2 million in the aggregate." Pltfs' 56.1 ¶ 17.

## C.

On March 9, 2020, Carlo Ramirez brought an action against various defendants in New York State Supreme Court, Queens County (the "Ramirez Action"). Pltfs' 56.1 ¶¶ 1, 7. On September 11, 2020, Ramirez filed an amended complaint, naming as defendants Unity and Blink. Harwood Decl., Ex. A, ECF No. 67-1. On December 11, 2020, Unity crossclaimed against Blink. Harwood Decl., Ex. C at 6-7, ECF No. 67-3. On January 5, 2021, Unity impleaded Wiretech. Harwood Decl., Ex. D, ECF No. 67-4.

In his amended complaint, Ramirez alleged that on February 13, 2020, he suffered personal injuries while working at the Worksite as a Wiretech employee. Pltfs' 56.1 ¶ 2; Merchants' 56.1 ¶ 2, ECF No. 75. Ramirez asserts that his injuries were caused when an electrical panel exploded. Pltfs' 56.1 ¶ 2. Ramirez contends that his injuries were caused solely by the carelessness, negligence, and wanton and willful disregard of each of the defendants in the Ramirez Action, including Blink and Unity. Harwood Decl., Ex. A. Ramirez seeks to hold the defendants in that action jointly and severally liable for his injuries. Id.

The parties dispute the cause of Ramirez's alleged injuries. The plaintiffs contend that either Blink, Wiretech, or both caused Ramirez's alleged injuries. Pltfs' 56.1 ¶¶ 9-10. Merchants asserts that carpenters employed by Blink caused the

explosion. Merchants 56.1 ¶¶ 2-3. HEIC maintains that Blink had nothing to do with the explosion. HEIC's 56.1 Counterstm't ¶ 15, ECF No. 88.

At his deposition in the Ramirez Action, Ramirez testified that the company "doing the Sheetrocking and all the frames . . . was the reason why this happened." Harwood Decl., Ex. B at 66, ECF No. 67-2. He then testified that the individuals responsible were "carpenters." Id. When asked who the carpenters worked for, Ramirez answered, "It was Blink, but now they saying something else." Id. at 66-67. But when asked whether he understood that the responsible carpenters were employed by Blink, he answered, "Was it Blink? I don't know if it was Blink. Don't let me say that." Id. at 67. Ramirez was then asked, "[W]hen you were on the job site you believed that the carpenters were employed by a company named Brisk; is that right?" Id. Ramirez answered, "Yes, yes, yes." Id.

### D.

On various occasions between March 18, 2020 and June 3, 2022, seeking additional insured coverage for Unity, the plaintiffs tendered the Ramirez Action to HEIC and Merchants. Vogel Decl., Exs. B-C, E, I, ECF Nos. 68-2, 68-3, 68-5, 68-8, 68-9; Harwood Decl., Exs. J, K, ECF Nos. 67-10, 67-11. HEIC disputes the exact tender date. ECF No. 89 at 23. Merchants admits that Colony (on Unity's behalf) tendered the Ramirez

Action to Wiretech and Merchants on March 18, 2020. Merchants'
Resp. to Pltfs' 56.1 ¶ 29, ECF No. 78. HEIC and Merchants each
denied, on various grounds, any additional insured coverage to
Unity. Vogel Decl., Exs. D, F, G, H, ECF Nos. 68-4, 68-6, 68-7,
68-8.

To date, HEIC has not agreed to defend Unity in the Ramirez
Action. Pltfs' 56.1 ¶ 36. On June 6, 2024, pursuant to the
Merchants Policy, Merchants agreed to defend Unity in the
Ramirez Action. Pavloff Decl., Ex. 2, ECF No. 74-2. In agreeing
to defend Unity, Merchants reserved various rights, including
the right "to deny and disclaim coverage to Unity" and "to
assert that [HEIC] . . . has an obligation to defend and
indemnify Unity." Id. at 2. Both HEIC and Merchants deny any
duty to indemnify Unity in the Ramirez Action. Harwood Decl.,
Exs. E, F, ECF Nos. 67-5, 67-6.

**E.**

On October 5, 2023, the plaintiffs brought this action. ECF
No. 1. On January 30, 2024, the plaintiffs filed an amended
complaint. ECF No. 30. On March 5, 2024, the plaintiffs filed
the operative Second Amended Complaint ("SAC"). ECF No. 40. On
March 14, 2024, Merchants crossclaimed against HEIC. ECF No. 43.
On April 9, 2024, HEIC crossclaimed against Merchants and
counterclaimed against the plaintiffs. ECF No. 46.

The parties now cross-move for partial summary judgment. ECF Nos. 66, 73, 84. HEIC also moves to dismiss the action for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. ECF No. 63.

## II.

### A.

The standard for granting summary judgment is well established.[3] "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994). The moving party bears the initial burden of "informing the district court of the basis of its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). When there are cross motions for summary judgment, the Court must assess each of the motions and determine whether any moving party is entitled to judgment as a matter of law. Admiral Indem. Co. v. Travelers Cas. & Sur. Co. of Am., 881 F. Supp. 2d 570, 574 (S.D.N.Y. 2012).

**B.**

To prevail against a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally

must accept as true the material factual allegations in the
complaint. See *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d
107, 110 (2d Cir. 2004). However, the Court does not draw all
reasonable inferences in the plaintiff's favor. Id. Indeed,
where jurisdictional facts are disputed, the Court has the power
and the obligation to consider matters outside the pleadings to
determine whether jurisdiction exists. See *Kamen v. Am. Tel. &
Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the
Court is guided by the decisional law that has developed under
Rule 56. See id.

### III.

HEIC argues that this action should be dismissed without
prejudice against HEIC for lack of subject-matter jurisdiction
pursuant to Rule 12(b)(1) of the Federal Rules of Civil
Procedure. ECF No. 65 at 14-20; ECF No. 107 at 2-9. According to
HEIC, the forum-selection clause set forth in paragraph 11.7 to
the Blink Subcontract (the "FS Clause") required the plaintiffs
to bring this action against HEIC in New Jersey State Superior
Court. ECF No. 65 at 14-20; ECF No. 107 at 2-9. United in
opposition, the plaintiffs and Merchants resist enforcement of
the FS Clause. ECF No. 83 at 6-14; ECF No. 80 at 2-5. The
plaintiffs and Merchants argue that the clause is permissive,
not mandatory, and that HEIC fails to meet the requirements for
non-signatory enforcement.

"[F]orum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances or unless the forum selection clause was invalid for such reasons as fraud or overreaching." Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 720-21 (2d Cir. 2013). "[I]n evaluating a motion to dismiss based on a forum selection clause, a district court typically relies on pleadings and affidavits, but must conduct an evidentiary hearing to resolve disputed factual questions in favor of the defendant." Martinez v. Bloomberg LP, 740 F.3d 211, 216-17 (2d Cir. 2014). "Because questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature, federal law applies to the interpretation of forum selection clauses in diversity cases." Magi XXI, 714 F.3d at 721.[4]

### A.

HEIC's motion to dismiss fails at the threshold. "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 60 (2013). Instead of invoking

---

[4] In any event, the parties "do not rely on any distinctive features of [New Jersey state] law and apply general contract law principles and federal precedent to discern the meaning and scope of the" FS Clause. Cf. Phillips, 494 F.3d at 386.

forum non conveniens, however, HEIC moves to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). HEIC contends that jurisdiction for this case lies solely in New Jersey State Superior Court. But "[a] forum-selection clause does not divest a federal court of subject matter jurisdiction, so it would not be appropriate to dismiss this case pursuant to Rule 12(b)(1)." Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 398 (S.D.N.Y. 2010); Rabinowitz v. Kelman, 75 F.4th 73, 79 (2d Cir. 2023) (noting that "forum selection clauses, however interpreted, have no bearing on a court's subject matter jurisdiction").

Moreover, HEIC has not moved to dismiss for improper venue pursuant to Rule 12(b)(3) or based on forum non conveniens. And the Court would not sua sponte dismiss this motion on forum non conveniens grounds because, for the reasons explained below, the forum-selection clause in the Blink Subcontract should not be enforced in this case. Accordingly, HEIC's motion to dismiss pursuant to Rule 12(b)(1) must be **denied.**

**B.**

HEIC has failed to show that the FS Clause requires dismissal of the plaintiffs' claims. A "four-part analysis" determines "whether to dismiss a claim based on a forum selection clause." Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007). Courts first ask, in order, whether: (1)

"the clause was reasonably communicated to the party resisting enforcement;" (2) the clause is "mandatory or permissive;" and (3) "the claims and parties involved in the suit are subject to the forum selection clause." Id. Where the first three requirements are met, the clause "is presumptively enforceable." Id. Courts then ask: (4) "whether the resisting party has rebutted the presumption of enforceability." Id. at 383–84.

On the first inquiry, the plaintiffs (and Merchants) resist enforcement of the FS Clause. It is undisputed that the clause was reasonably communicated to Unity, a party to the Blink Subcontract. See ECF No. 83 at 6. It is likewise beyond dispute that the clause was not reasonably and timely communicated to Colony (and Merchants). No party contends that the insurers were involved in the drafting or negotiation of the Blink Subcontract. See ECF No. 107 at 2.

On the second inquiry, the FS Clause is mandatory. Mandatory forum selection clauses "require that disputes must be brought in the designated forum, to the exclusion of all other fora where jurisdiction may also lie." Glob. Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 225 (2d Cir. 2011). "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." Phillips, 494 F.3d at 386.

14

The FS Clause provides: "Any dispute . . . shall be resolved by litigation in in [sic] the New Jersey State Superior Court." Harwood Decl., Ex. G at 4. Because the clause incorporates obligatory venue language, it is mandatory. See, e.g., Phillips, 494 F.3d at 386 (finding that "are to be brought" established the selected forum "as an obligatory venue for proceedings within the scope of the clause"); Dart Mech. Corp. v. Johnson Controls, Inc., No. 13-cv-2941, 2013 WL 5937424, at *2 (E.D.N.Y. Nov. 4, 2013) (finding that nearly identical language "set[] venue in [the] New York State courts").

On the third inquiry, regardless of whether the claims involved are subject to the FS Clause, HEIC lacks the ability to enforce it against the plaintiffs (and Merchants). Non-signatory status, "standing alone," is insufficient "to preclude enforcement of a forum selection clause." Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009). Rather, a non-signatory "may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory." Magi XXI, 714 F.3d at 723. For a non-signatory "to be bound by" or "to enforce" a forum-selection clause—in other words, for there to be a sufficiently close relationship—it must have been "foreseeable that [the non-signatory] would be bound"

by the forum-selection clause. See Fasano v. Li, 47 F.4th 91, 103 (2d Cir. 2022).

To satisfy the third inquiry, HEIC must demonstrate a sufficiently "close relationship" to Blink for purposes of the Blink Subcontract. HEIC has failed to do so. It was not foreseeable to Unity, and a fortiori Colony (and Merchants), that HEIC would be bound by the FS Clause. HEIC had neither "an active role in the transaction between the signatories," i.e., the Blink Subcontract, nor "an active role in [Blink], the company that was the signatory." See NuMSP, LLC v. St. Etienne, 462 F. Supp. 3d 330, 351 (S.D.N.Y. 2020). And HEIC is not a third-party beneficiary to the Blink Subcontract. See id. Nor does this case involve any claims for subrogation. Twin City Fire Ins. Co. v. Harel Ins. Co. Ltd., No. 10-cv-7842, 2011 WL 3480948, at *4 (S.D.N.Y. Aug. 5, 2011). Having failed to show a close relationship to Blink for purposes of the Blink Subcontract, HEIC may not enforce the FS Clause against the plaintiffs (and Merchants). See Vuzix Corp. v. Pearson, No. 19-cv-689, 2019 WL 5865342, at *5 (S.D.N.Y. Nov. 6, 2019).

In sum, HEIC has failed to show that the FS Clause is presumptively enforceable by HEIC against the plaintiffs (and Merchants). Therefore, HEIC's argument that the plaintiffs were required to bring this action in the Superior Court of New

Jersey is without merit. Accordingly, HEIC's motion to dismiss is **denied.**

**IV.**

The parties cross-move for partial summary judgment on two issues: (a) the duty to defend Unity in the Ramirez Action; and (b) whether the defendants must reimburse the plaintiffs for post-tender defense fees and costs incurred in the Ramirez Action. Recognizing that the Ramirez Action is ongoing, the parties have not moved for partial summary judgment on the duty to indemnify Unity in that underlying action.

As a threshold matter, "a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits." Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 151 (2d Cir. 2013). "Pursuant to New York's choice-of-law rules, an agreement between the parties to apply New York law, even where that agreement is implicit, is sufficient to establish the appropriate choice of law." Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., 918 F. Supp. 2d 243, 252 (S.D.N.Y. 2013). Because the parties' briefs apply New York law, New York law governs. Id.

**A.**

The plaintiffs seek a declaration that, pursuant to the HEIC Policy, HEIC owes a duty to defend Unity in the Ramirez

17

Action. ECF No. 69 at 12–18.[5] Merchants adopts the plaintiffs'
argument in full and argues additionally that Merchants and HEIC
share a duty to defend Unity on an equal basis. ECF No. 76 at 4–
7. HEIC contends that it has no duty to defend Unity in the
Ramirez Action. ECF No. 89 at 12–23.

**1.**

Under New York law, an insurer's duty to defend against a
claim is "exceedingly broad." Colon v. Aetna Life & Cas. Ins.
Co., 66 N.Y.2d 6, 8 (1985). An insurer is obligated to defend a
claim if the underlying complaint "suggest[s] the reasonable
possibility of coverage" under the insurance policy. Fitzpatrick
v. Am. Honda Motor Co., 78 N.Y.2d 61, 66 (1991). An insurer's
duty to defend is excused only if it can show that, as a matter
of law, "there is no possible factual or legal basis on which
the insurer might eventually be held to indemnify the insured."
City of Johnstown v. Bankers Standard Ins. Co., 877 F.2d 1146,
1149 (2d Cir. 1989).

The HEIC Policy includes Unity as an additional insured.
Harwood Decl., Ex. E ¶ 53. And the HEIC Policy provided
additional insured coverage with respect to liability for bodily
injury "caused, in whole in part by: a. [Blink's] acts or

---

[5] The plaintiffs also moved for a declaration that Merchants owes a duty to
defend Unity. ECF No. 69 at 19-20. That motion is **denied** as moot because
Merchants has agreed to defend Unity in the Ramirez Action subject to
Merchants' reservation of rights. Pavloff Decl., Ex. 2.

omissions; or b. The acts or omissions of those acting on [Blink's] behalf; In the performance of [Blink's] ongoing operations for [Unity]." Id. "It follows that [HEIC] is obligated to defend [Unity] in the underlying action[] if [Ramirez's] complaints allege that his injuries were caused, at least in part, by [Blink's] acts or omissions performed as part of its ongoing operations for [Unity] . . . at a covered location." Kookmin Best Ins. Co. v. Foremost Ins. Co., No. 18-cv-782, 2019 WL 1059973, at *6 (S.D.N.Y. Mar. 5, 2019).

Plainly, the amended complaint in the Ramirez Action alleges that Ramirez's injuries were caused by Blink's acts or omissions at the Worksite. Harwood Decl., Ex. A. Because Ramirez's allegations "suggest a reasonable possibility of coverage," Auto. Ins. Co. of Hartford v. Cook, 850 N.E.2d 1152, 1155 (N.Y. 2006), HEIC's duty to defend is triggered. See also Vargas v. City of New York, 71 N.Y.S.3d 415, 417 (App. Div. 2018) (finding that the insurer was required to defend an additional insured because it was "possible that [the] plaintiff's injury was caused by" a named insured).

HEIC attempts to escape this duty by arguing that "there is no possible factual or legal basis on which it might eventually be obligated to indemnify the insured." City of Johnstown, 877 F.2d at 1149. According to HEIC, there is no possible basis on which Blink could be held liable for causing Ramirez's injuries.

19

In support of this argument, HEIC points primarily to Ramirez's internally inconsistent deposition testimony. See Harwood Decl., Ex. B at 66-67. But at most, HEIC's argument is that "a factfinder may ultimately determine that [Blink's] acts or omissions did not create any defects" at the Worksite that proximately caused the explosion that allegedly injured Ramirez. See Kookmin Best, 2019 WL 1059973, at *7. "[T]hat uncertain outcome" in the Ramirez Action "is immaterial to the question whether [HEIC] is obligated to defend [Unity]." Id.

"To relieve itself of its broad duty to defend [Unity] as an additional insured, [HEIC] carries a heavy burden. It must establish, based on [Ramirez's] allegations, that there is no possibility of coverage." Id. at *6. This is, however, not a case where "[t]he underlying pleadings simply show that [Blink], at most, merely furnished the occasion for the injury." LM Ins. Corp. v. Fed. Ins. Co., 585 F. Supp. 3d 493, 501 (S.D.N.Y. 2022), appeal docketed, No. 24-2875 (2d Cir. Oct. 29, 2024). Rather, it is undisputed that Blink performed carpentry work at the Worksite. See Harwood Decl., Ex. G. And Ramirez has made a series of specific allegations against Blink in the Ramirez Action. Harwood Decl., Ex. A. At the very least, it is within the realm of possibility that Blink proximately caused the alleged electrical explosion at the Worksite. Therefore, HEIC has failed to establish "that there is no possibility" of

coverage. See All State Interior Demo., Inc. v. Scottsdale Ins. Co., 92 N.Y.S.3d 256, 258 (App. Div. 2019). Accordingly, pursuant to the HEIC Policy, HEIC must defend Unity in the Ramirez Action.

**2.**

Merchants seeks a declaration that HEIC shares with Merchants an equal duty to defend Unity. "When an insured has more than one potentially applicable policy for a claim, courts determine the insurers' obligations to the insured by applying a body of law developed to resolve 'other insurance' disputes." Great N. Ins. Co. v. Mt. Vernon Fire Ins. Co., 708 N.E.2d 167, 170 (N.Y. 1999). If the two policies contain irreconcilable "other insurance" clauses, the clauses "cancel each other out and the companies must apportion the costs of defending and indemnifying . . . on a pro rata basis." Id. But if the policies contain reconcilable "other insurance" clauses, those terms control coverage priority. Id. In that case, the primary policy "must pay up to the limits of its policy before" the secondary "coverage becomes effective." Id.

HEIC did not respond to Merchants' co-insurance arguments. See ECF No. 97. Instead, HEIC doubled down on its primary argument that HEIC has no duty to defend Unity at all. Id. "[B]y not responding to" Merchants' arguments, HEIC "has conceded

them." <u>Skyline Risk Mgmt., Inc. v. Legakis</u>, 733 F. Supp. 3d 316, 325 (S.D.N.Y. 2024).

In any event, the unambiguous terms of the HEIC Policy and the Merchants Policy show that HEIC and Merchants share an equal duty to defend Unity in the Ramirez Action. The HEIC Policy was primary and non-contributory as required by the Blink Subcontract. HEIC's Resp. to Merchants' 56.1 ¶ 14. Where all other applicable insurance policies permitted contribution by equal share, the HEIC Policy followed that cost-allocation method. <u>Id.</u> ¶ 15. The Merchants Policy likewise provided primary and non-contributory coverage as required by the Wiretech Subcontract. Pavloff Decl., Ex. 1 at *106. Accordingly, HEIC and Merchants "must apportion the costs of defending [Unity] . . . on a pro rata basis." <u>Great N. Ins. Co.</u>, 708 N.E.2d at 170.

**B.**

The plaintiffs also seek a declaration that HEIC and Merchants are obligated to reimburse the plaintiffs "for all post tender defense costs [the plaintiffs] have incurred." ECF No. 69 at 21. Because the plaintiffs have not specified the amount of defense costs incurred, their argument seeks summary judgment on liability only, and not damages. Merchants did not respond to this argument, thereby conceding its validity. HEIC argues that summary judgment is inappropriate because HEIC

disputes the plaintiffs' tender date and the reasonableness of any fees and expenses incurred by Colony. ECF No. 89 at 23.

Because HEIC and Merchants share an equal duty to defend Unity in the Ramirez Action, HEIC and Merchants must reimburse Colony for the post-tender costs that Colony incurred defending Unity in the Ramirez Action. Harco Constr., LLC v. First Mercury Ins. Co., 140 N.Y.S.3d 553, 556 (App. Div. 2021).

Merchants admits that the plaintiffs tendered the Ramirez Action on March 18, 2020. Merchants' Resp. to Pltfs' 56.1 ¶ 29. Therefore, Merchants must reimburse Colony for the reasonable attorneys' fees and litigation expenses that Colony incurred defending Unity in the Ramirez Action after March 18, 2020.

Unlike Merchants, HEIC disputes the exact tender date. ECF No. 89 at 23. HEIC also expressly disputes the reasonableness of the attorneys' fees and litigation expenses incurred by Colony. Id. While these objections narrow the scope of the appropriate summary-judgment relief, neither objection prevents the entry of judgment with respect to liability. Accordingly, HEIC must reimburse Colony for the reasonable attorneys' fees and litigation expenses that Colony incurred defending Unity in the Ramirez Action after the plaintiffs tendered the Ramirez Action to HEIC. For the period following the plaintiffs' tender to HEIC, Merchants and HEIC share in equal share the liability for reimbursing Colony for fees and expenses.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, and as discussed above, the plaintiffs' motion for partial summary judgment is **granted in part**, Merchants' motion for partial summary judgment is **granted**, HEIC's motion for partial summary judgment is **denied**, and HEIC's motion to dismiss for lack of subject-matter jurisdiction is **denied.**

The parties should submit a joint status report within fourteen (14) days of the date of this Memorandum Opinion and Order.

The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:    New York, New York
          February 25, 2025

                              _____
                                   John G. Koeltl
                              **United States District Judge**